# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| DAVID ALAN COCHRAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-13-1238-F |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff David Alan Cochran brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. United States District Judge Stephen P. Friot has referred this matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b) and Rule 72(b) of the Federal Rules of Civil Procedure. The Commissioner has answered and filed the administrative record (Doc. No. 14, hereinafter "R.__"). The parties have briefed their positions, and the case is now ready for decision. For the reasons set forth below, the undersigned recommends that the Commissioner's decision be AFFIRMED.

### PROCEDURAL HISTORY

Plaintiff protectively filed his application for SSI benefits on December 20, 2010, alleging a disability onset date of June 7, 2008. R. 149-62, 182. Following denial of his

application initially and on reconsideration, Plaintiff requested and appeared at a hearing before an Administrative Law Judge ("ALJ") on February 15, 2012, along with his attorney. R. 36-79, 80-83, 86-89, 93-98. The ALJ issued an unfavorable decision on June 29, 2012. R. 21-31. The SSA Appeals Council initially denied Plaintiff's request for review, but later granted Plaintiff's request that it consider additional information. R. 1-9. Upon reconsideration, the Appeals Council again denied Plaintiff's request for review, making the ALJ's unfavorable decision the final decision of the Commissioner. R. 1-6; 20 C.F.R. § 416.1481. This action for judicial review followed.

## ADMINISTRATIVE DECISION

The Commissioner uses a five-step sequential evaluation process to determine eligibility for disability benefits. *See Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009); 20 C.F.R. § 416.920. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 20, 2010, his application date. R. 23; *see* 20 C.F.R. § 416.971. At step two, the ALJ determined that Plaintiff had the severe impairments of "degenerative disc disease of the lumbar spine, essential hypertension, seizure disorder, and posttraumatic depression disorder." R. 23-25; *see* 20 C.F.R. § 416.920(c). At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the presumptively disabling impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 25-27; *see* 20 C.F.R. § 416.920(d).

The ALJ next assessed Plaintiff's residual functional capacity ("RFC") based on all of his impairments. R. 27-29; *see* 20 C.F.R. § 416.920(a)(4)(iv). The ALJ found that Plaintiff had the RFC to perform light work (i.e., lifting and carrying 20 pounds

occasionally and 10 pounds frequently), subject to additional exertional and nonexertional limitations:

> [Plaintiff] can sit for about 6 hours during an eight-hour workday and can stand and walk for about 6 hours during an eight-hour workday. [Plaintiff] can occasionally climb, balance, stoop, kneel, crouch and crawl. He can have no exposure to hazards, such as unprotected heights and heavy machinery. [Plaintiff] cannot drive. [Plaintiff] can understand, remember, and carry out simple, routine, and repetitive tasks. [Plaintiff] can respond appropriately to supervisors, co-workers, the general public, and usual work situations.

R. 27; *see* 20 C.F.R. § 416.967(b) (defining "light work"); SSR 83-10, 1983 WL 31251, at *6 (1983) (same). At step four, the ALJ found that Plaintiff was unable to perform any of his past relevant work. R. 29; *see* 20 C.F.R. § 416.965.

At step five, the ALJ considered whether there are jobs existing in significant numbers in the national economy that Plaintiff—in view of his age, education, work experience, and RFC—could perform. Taking into consideration testimony provided by a vocational expert ("VE") at the hearing, the ALJ concluded that Plaintiff could perform unskilled, light occupations such as electronics assembler, mail clerk, or stock clerk,[1] all of which offer jobs that exist in significant numbers in the national economy. R. 29-30;

---

[1] All of these representative occupations are light work with a Specific Vocational Preparation ("SVP") of 2. R. 30, 76-77. An SVP is "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." Components of the Definition Trailer, *Dictionary of Occupational Titles* app. C (4th rev. ed. 1991), 1991 WL 688702. An SVP of 2 is anything beyond short demonstration up to and including 1 month, *id.*, and generally corresponds with the regulatory definition of "unskilled work." *See* 20 C.F.R. § 416.968(a) ("Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. . . . For example, . . . a person can usually learn to do the job in 30 days . . . .").

3

*see* 20 C.F.R. § 416.945(a)(5)(ii). On that basis, the ALJ concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, since December 20, 2010. R. 30; *see* 20 C.F.R. § 416.920(g).

## STANDARD OF REVIEW

Judicial review of the Commissioner's final decision is limited to determining whether factual findings are supported by substantial evidence in the record as a whole and whether correct legal standards were applied. *Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003) (internal quotation marks omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Branum v. Barnhart*, 385 F.3d 1268, 1270 (10th Cir. 2004) (internal quotation marks omitted). The court "meticulously examine[s] the record as a whole," including any evidence that may undercut or detract from the ALJ's findings, to determine if the substantiality test has been met. *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). While the court considers whether the Commissioner followed applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

## ANALYSIS

When the ALJ reaches step five of the sequential-evaluation analysis, the burden shifts from the claimant to the Commissioner to show "there are sufficient jobs in the

national economy for a hypothetical person with [the claimant's] impairments," *Jensen v. Barnhart,* 436 F.3d 1163, 1168 (10th Cir. 2005), "given [his or] her age, education, and work experience," *Lax v. Astrue,* 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks omitted). Here, Plaintiff contends that the ALJ's step-five finding that Plaintiff could perform work that exists in the national economy is not supported by substantial evidence. *See* Pl.'s Br., Doc. No. 16, at 2-14. While the undersigned agrees that the ALJ erred with respect to several statements made in his step-five finding, these errors were harmless and thus do not provide a ground for reversal.

A. *Whether the ALJ Erred Regarding Plaintiff's Age*

Plaintiff was born on January 12, 1960, and filed his SSI application on December 20, 2010, at the age of 50 years and 11 months. R. 182. Plaintiff first argues that, because Plaintiff was over the age of 50 on the date he filed his application, the ALJ erred in finding that Plaintiff was "'a younger individual,' i.e., between ages 18 and 49, for the purpose of evaluating Plaintiff's application. Pl.'s Br. at 4 (quoting R. 29); *see* 20 C.F.R. § 416.963.

The ALJ stated as follows regarding Plaintiff's age: "The claimant was born on January 12, 1960, and was 50 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963)." R. 29. This statement is obviously inconsistent and erroneous. The question is whether it was prejudicial to the ALJ's analysis and conclusion.

Plaintiff does not assert that the ALJ's RFC determination was affected by a misapprehension of Plaintiff's age or that the RFC is otherwise unsupported by

5

substantial evidence. *See* Pl.'s Br. at 2. Indeed, in describing the substantive evidence, the ALJ correctly noted Plaintiff's birth date and that he "was 50 years old" on the date he applied for disability benefits. R. 29.

Rather, at issue here is the use of Plaintiff's age as a vocational factor in the ALJ's step-five determination of whether Plaintiff can adjust to other work that exists in significant numbers in the national economy. The Commissioner's regulations categorize an applicant under age 50 as a "Younger person" and an applicant aged 50 to 54 as a "Person closely approaching advanced age." 20 C.F.R. § 416.963(c)-(d). The regulation states that, for an applicant in the first category, "age will [not] seriously affect your ability to adjust to other work" but that, for an applicant in the second category, age "along with a severe impairment(s) and limited work experience" may do so. *Id.*[2]

---

[2] The applicable regulation states:

> (a) General. "Age" means your chronological age. When we decide whether you are disabled under § 416.920(g)(1), we will consider your chronological age in combination with your residual functional capacity, education, and work experience. We will not consider your ability to adjust to other work on the basis of your age alone. In determining the extent to which age affects a person's ability to adjust to other work, we consider advancing age to be an increasingly limiting factor in the person's ability to make such an adjustment . . . .
>
> (b) How we apply the age categories. When we make a finding about your ability to do other work under § 416.920(f)(1), we will use the age categories in paragraphs (c) through (e) of this section. We will use each of the age categories that applies to you during the period for which we must determine if you are disabled. We will not apply the age categories mechanically in a borderline situation. If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case.
>
> (c) Younger person. If you are a younger person (under age 50), we generally do

At step five, the ALJ relied upon VE testimony regarding occupations that a person of Plaintiff's age, education, work experience, and RFC could perform. *See* R. 30, 76. Critically, in describing a hypothetical scenario to the VE, the ALJ asked the VE to assume a claimant who was "born in 1960," thus providing the VE with Plaintiff's correct age. *See* R. 76.[3] Citing these representative occupations, the ALJ found that Plaintiff could perform specific jobs that exist in significant numbers in the national economy. R. 30.

Because the ALJ based his step-five determination on a finding of specific occupations that the Plaintiff can perform, and that finding was based on VE testimony concerning a hypothetical claimant *matching Plaintiff's actual age*, the ALJ's erroneous

---

not consider that your age will seriously affect your ability to adjust to other work. However, in some circumstances, we consider that persons age 45-49 are more limited in their ability to adjust to other work than persons who have not attained age 45. . . . .

(d) Person closely approaching advanced age. If you are closely approaching advanced age (age 50-54), we will consider that your age along with a severe impairment(s) and limited work experience may seriously affect your ability to adjust to other work.

20 C.F.R. § 416.963.

[3] In discussing his use of the Medical-Vocational Guidelines, sometimes referred to as the Grids, as a "framework" for the step-five analysis, the ALJ cited Medical-Vocational Rule 202.18 as the rule that would apply if Plaintiff were able to perform the full range of light work. R. 30; *see* 20 C.F.R. pt. 404, subpt. P app. 2, tbl. 2. That rule provides that a claimant who is (i) a "Younger individual," with (ii) "Limited or less" education, and (iii) skilled or "semiskilled" previous work experience but no transferable skills, is not disabled. *See* 20 C.F.R. pt. 404, subpt. P app. 2, R. 202.18. The corresponding rule for a person "Closely approaching advanced age" is Rule 202.11. *See id.* R. 202.11. That rule likewise provides that a claimant under the same vocational factors, but aged 50 to 54, is not disabled. *See id.* Because both Rules dictate the same result, no harm arose from the ALJ's citation to Rule 202.18 instead of Rule 202.11.

statements regarding the applicable SSA age category were immaterial to the ALJ's step-five conclusion. Plaintiff has not demonstrated any harm caused by this error, and harmless errors do not require remand. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); *Harris v. Astrue*, 496 F. App'x 816, 819 n.1 ("[P]lacing the burden on [claimant] to show prejudicial error is not tantamount to shifting the Commissioner's step-five burden to [claimant]. The burden to show prejudicial error on appeal rests with [claimant]." (citing *Shinseki*, 556 U.S. at 409)). *See generally Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (discussing application of harmless error doctrine in SSA disability cases). Accordingly, the undersigned finds the ALJ's error to be harmless. *See Allen*, 357 F.3d at 1145 (finding application of harmless-error rubric appropriate when "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way").

B. *Whether the ALJ Erred Regarding Representative Occupations*

At step five of the sequential analysis, an ALJ may consider testimony by a VE regarding the requirements of specific jobs and their availability in the national and regional economies. 20 C.F.R. § 416.966(e). Here, the VE testified that jobs were available for a claimant of Plaintiff's age, education, work experience, and RFC. R. 76. The VE cited three specific examples:

> [T]he first would be as an electronics assembler, DOT code 726.682-014. This is a light position with an SVP of two. In the nation there are 46,000 jobs; in Oklahoma there are 485 jobs. The second would be as a mail clerk . . . DOT code 208.685-014. It is also a light position with an SVP of two. Nationally there are 79,000 jobs; in Oklahoma there are 735 jobs. And the

8

> third position would be as a stock clerk, DOT code 221.587-018. This is a light position with an SVP of two. Nationally there are 177,000 positions; in Oklahoma there are 2200 positions.

R. 76-77 (emphasis added). In response to a direct inquiry from the ALJ, the VE stated that his testimony was consistent with the DOT unless otherwise specified. R. 77. In his decision, the ALJ referred to the same three occupations—but cited the DOT code for the stock clerk position as 221.584-018—to determine that "there are jobs that exist in significant number in the national economy that the claimant can perform." R. 30.

Plaintiff asserts that the VE's testimony regarding these three occupations conflicted with their descriptions in the Dictionary of Occupational Titles ("DOT"), and that the ALJ erred by relying on the VE's testimony without investigating and resolving the conflicts. Pl.'s Br. at 5, 11. Plaintiff contends that "of the three jobs identified by the VE and the ALJ, none of the listed jobs coincide with their descriptions in the [DOT]." Pl.'s Br. at 4-5; Pl.'s Reply, Doc. No. 18, at 1-2. As a result, Plaintiff claims, the ALJ's decision is not supported by substantial evidence and, therefore, must be reversed. Pl.'s Br. at 14; Pl.'s Reply at 4.

The undersigned agrees that the VE's and ALJ's descriptions of the DOT entries at issue were imprecise and that the description of one of the occupations was too vague to allow for meaningful review. However, upon considering the extent and impact of the challenged descriptions, the undersigned determines that the error in this case was harmless.

9

1. Electronics Assembler

The first representative occupation cited by the VE and relied upon by the ALJ was "electronics assembler" with a DOT code of "726.682-014." R. 30, 76. Plaintiff correctly asserts that the occupational title for the DOT code provided is actually "Wire-Wrapping-Machine Operator." *See* Pl.'s Br. at 5; DOT 726.682-024 (Wire-Wrapping-Machine Operator), 1991 WL 67951. Plaintiff also correctly asserts that this occupation requires reasoning, math, and language levels of 3, which Plaintiff contends are beyond his abilities and exceed the limitations in his RFC. *See* DOT 726.682-014, 1991 WL 679591; Pl.'s Br. at 5-7. The Commissioner does not dispute Plaintiff's claim that he cannot perform this job. Def.'s Br., Doc. No. 17, at 10.

In *Haddock v. Apfel*, the Tenth Circuit held that an "ALJ must investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock*, 196 F.3d 1084, 1091 (10th Cir. 1999); *see* DOT (4th rev. ed. 1991). Thereafter, the Commissioner published Social Security Ruling ("SSR") 00-4p, in which the Commissioner established a policy interpretation for the use of VE evidence. *See* SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000). Under the SSR, an ALJ has two affirmative responsibilities. First, the ALJ must "[a]sk the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT." *Id.* at *4. If the VE's "evidence appears to conflict with the DOT," then the ALJ must "obtain a reasonable explanation for the apparent conflict." *Id.*

The ALJ did not properly resolve the conflicts between the VE's testimony and the DOT description of listing 726.682-014 (Wire-Wrapping-Machine Operator). It is possible that the VE intended to testify regarding the occupation of "electronics assembler" at DOT code 726.684-018, but that job is listed at an SVP level of 4 and thus also presents an unresolved conflict with the VE's testimony. In accordance with the above authorities, the ALJ's step-five analysis is not supported by substantial evidence with respect to this first occupation.

2. Mail Clerk

The second representative occupation cited by the VE and relied upon by the ALJ was "mail clerk" with a DOT code of 208.685-014. R. 30, 77. Plaintiff correctly asserts that the occupational title for the DOT code provided is actually "Folding-Machine Operator." *See* Pl.'s Br. at 10; DOT 208.685-014 (Folding-Machine Operator), 1991 WL 671754.

The DOT lists a folding-machine operator as a type of mail clerk, *see* DOT 208.687-026, 1991 WL 671754, and describes the job as follows:

> Tends machine that folds advertising literature, forms, letters, or other paper sheets: Turns indicator knobs to adjust folding rollers, side guides, and stops, according to specified size and number of folds. Starts machine and feeds paper sheets between folding rollers. Removes folded sheets. May place folded sheets into envelopes preparatory to mailing.

DOT 208.685-014, 1991 WL 671754. The SVP level of 2 matches that given by the VE. *Id.*; R. 76-77. Thus, although the title provided by the VE does not match the title in the DOT, it is clear from the substance of the job entry that the job listed at DOT 208.685-014 was the job intended by the VE and ALJ. *See Stokes v. Astrue*, 274 F. App'x 675,

11

683 n.5 (10th Cir. 2008) (noting without concern that the titles provided by the VE differed from official titles listed in the DOT).[4]

Plaintiff further asserts that, by definition, this job requires working with machinery, and contends this is in direct conflict with his RFC, which requires that Plaintiff "can have no exposure to hazards, such as unprotected heights and heavy machinery." Pl.'s Br. at 10-11; R. 27. As such, Plaintiff alleges that the ALJ erred by not investigating and obtaining a reasonable explanation for the conflict between the VE's testimony that an individual with his RFC could perform the job and the DOT job description requiring tending to machinery. *See* Pl.'s Br. at 10-13.

Plaintiff does not, however, provide any support for his allegation that a folding machine, which the DOT categorizes as an "Office Machine," qualifies as the type of heavy machinery that he is to avoid. *See* Pl.'s Br. at 10-11; DOT Clerical: Clerical and Kindred Occupations, 1991 WL 683272. Neither the DOT nor SSA regulations define "heavy machinery," but the standard use of that term does not encompass a clerical office

---

[4] Plaintiff cites *Schulte v. Astrue*, in which this Court considered the ALJ's reliance at step five on VE testimony where the VE had cited two general categories of jobs— "assembly worker" and "machine operator"—without providing, by name or code, clear descriptions of the specific DOT occupation entries at issue. *See Schulte v. Astrue*, No. CIV-10-959-R, 2011 WL 1885480, at *1-2 (W.D. Okla. May 18, 2011). Noting that this left the Court in the position of guessing which occupations were being relied upon, the Court held that the ALJ committed prejudicial error by failing to "elicit enough vocational evidence for this court to determine whether there is a conflict" "between [the] VE's testimony and a job description in the DOT." *Id*. at *3 (internal quotation marks omitted) (citing *Carpenter v. Astrue*, 537 F.3d 1264, 1271 (10th Cir. 2008); *Haddock*, 196 F.3d at 1089). Here, in contrast to *Schulte*, the ALJ used a broad job title but stated the precise DOT code for the specific occupation being discussed. This was sufficient to identify the occupation and permit meaningful review.

machine of the type described in DOT 208.685-014.[5] *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (finding no conflict between VE testimony and the DOT after reviewing DOT descriptions of the designated jobs and comparing them with claimant's limitations). Because there was no conflict between the RFC's requirement that Plaintiff avoid exposure to heavy machinery, and DOT 208.685-014's provision for the use of a folding machine, the ALJ was not obligated to elicit an explanation for any such conflict.

The ALJ's step-five analysis is supported by substantial evidence with respect to the second occupation cited by the VE.

3. Stock Clerk

Finally, the VE cited a third representative occupation of stock clerk with a DOT code of 221.587-018. R. 77. In relying upon this testimony in his decision, the ALJ listed the DOT code as 221.584-018. R. 30. Plaintiff points out that there is no DOT listing with the job number given by the ALJ. Pl.'s Br. at 8. The Commissioner submits that this was merely a typographical error and notes that the fact that there is no listing with the job number the ALJ stated is further indication of an inadvertent error. Def.'s

---

[5] This conclusion is bolstered by the inferences that reasonably may be drawn from the ALJ's decision and the VE's testimony. As noted above, the VE specifically denied any inconsistencies between his testimony and the DOT. R. 77; *see* R. 75-78; *see also Vine v. Astrue*, No. 09-2212-KHV-GBC, 2010 WL 2245079, at *4-5 (D. Kan. May 11, 2010) (report and recommendation finding no conflict when VE responded to ALJ's question regarding conflicts that there were none, and plaintiff presented no evidence of or authority for a conflict), *adopted*, 2010 WL 2245076 (D. Kan. June 2, 2010). Nor did the ALJ note any such inconsistency in his written decision—an omission that indicates that the ALJ did not perceive any such conflict.

13

Br. at 7-8. The undersigned agrees and finds the scrivener's error harmless. *See Poppa*, 569 F.3d at 1172 n.5 (dismissing import of ALJ's scrivener's error); *Smith v. Colvin*, No. CIV-13-617-F, 2014 WL 4384705, at *3 (W.D. Okla. Sept. 3, 2014) (finding consulting psychologist's scrivener's error immaterial).

Further, Plaintiff asserts—correctly—that DOT 221.587-018 is listed under the title "Odd-Piece Checker" and not "stock clerk." *See* Pl.'s Br. at 8-9; DOT 221.587-018 (Odd-Piece Checker), 1991 WL 672053. The DOT lists an odd-piece checker under the category of "Production and Stock Clerks and Related Occupations." DOT 221.587-018, 1991 WL 672053. The job description is as follows:

> Obtains missing garment parts from stockroom to complete specified lots of knitted garments. Distributes parts to production workers. Records quantity, size, and style of parts distributed.

DOT 221.587-018, 1991 WL 672053. Thus, this is another instance of the VE using a broad job title but—in contrast to *Schulte*, 2011 WL 1885480, at *1-2—stating the precise DOT code for the specific occupation he is citing. In that context, no error arises from the imprecise title used by the ALJ. *See Stokes*, 274 F. App'x at 683 n.5 (10th Cir. 2008).

Plaintiff further argues that DOT 221.587-018 requires a language level of 2 and that "[t]here [was] no discussion or inquiry by the ALJ or VE as whether or not the Plaintiff, with a less than 9th grade education, limited to simple reading and writing and unknown speaking skills can perform the minimal language requirements of the job." Pl.'s Br. at 9. In presenting his hypothetical to the VE, however, the ALJ specifically

told the VE to assume that the individual had "limited education." R. 76. "Limited education" is defined in the regulations to mean:

> [A]bility in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. We generally consider that a 7th grade through 11th grade level of formal education is a limited education.

20 C.F.R. § 416.964(b)(3). Accordingly, a person with limited education is generally assumed to be capable of unskilled work. *Cf. id.* §§ 416.964(b)(3), .968(a). In light of the "limited education" hypothetical given to the VE, and the fact that the job of odd-piece checker is an unskilled job,[6] the undersigned finds no conflict between the DOT listing requiring a language level of 2 and the VE's testimony that Plaintiff could perform that occupation. Nor has Plaintiff established that there is actually a conflict between the VE's testimony and the DOT. The undersigned finds no error in the ALJ's reliance upon the VE testimony in this regard and that such reliance does not render the ALJ's finding unsupported by substantial evidence.

The ALJ's step-five analysis is supported by substantial evidence with respect to the third occupation cited by the VE.

4. <u>Harmless Error</u>

At step five, the ALJ determined that "jobs exist in the national economy" "in significant numbers" "for an individual with [Plaintiff's] age, education, work experience, and [RFC]." R. 30; *see* 42 U.S.C. § 423(d)(1)(A) ("'[W]ork which exists in the national economy' means work which exists in significant numbers either in the

---

[6] *See* note 1 *supra*; R. 30; DOT 221.587-018, 1991 WL 672053.

region where such individual lives or in several regions of the country."); 20 C.F.R. § 416.969a(a) ("If you cannot do your past relevant work, we will use the same [RFC] assessment along with your age, education, and work experience to decide if you can adjust to any other work which exists in the national economy."). As detailed above, relying on the VE's testimony, the ALJ cited the representative occupations of electronics assembler (DOT code 726.682-014) with 485 jobs in Oklahoma and 46,000 jobs in the national economy; mail clerk/folding-machine operator (DOT code 208.685-014) with 735 jobs in Oklahoma and 79,000 jobs in the national economy; and stock clerk/odd-piece checker (DOT code 221.587-018) with 2200 jobs in Oklahoma and 177,000 jobs in the national economy. R. 30. The undersigned has found that the ALJ erred in citing the first occupation but not the second or third.

Where an ALJ has improperly relied on one or more, but not *all*, of the occupations cited in the ALJ's step-five determination, "the Tenth Circuit has often continued its analysis" and rejected a claimant's argument for remand if the ALJ's findings regarding the remaining occupations support the ALJ's ruling. *See Keyes-Zachary v. Colvin*, No. 13-CV-0638-CVE-FHM, 2015 WL 65528, at *5-6 (N.D. Okla. Jan. 5, 2015) (citing cases); *see, e.g.*, *Chrismon v. Colvin*, 531 F. App'x 893, 899-900 (10th Cir. 2013) (applying harmless-error analysis and holding that step-five "significant numbers" requirement was met where two of four occupations cited by the ALJ offered a total of 17,500 jobs regionally and 212,000 jobs nationally); *Stokes*, 274 F. App'x at 684 (finding ALJ's error in considering certain occupations harmless at step five where two of four occupations cited by the ALJ offered a total of 11,000 jobs regionally and

152,000 jobs nationally); *see also Rogers v. Astrue*, 312 F. App'x 138, 141-42 (10th Cir. 2009) (affirming where there was no error as to one of four occupations identified by ALJ and that occupation offered 11,000 jobs in the national economy). *But see Norris v. Barnhart*, 197 F. App'x 771, 776-77 (10th Cir. 2006) (reversing on other grounds and stating, in connection with occupations totaling approximately 1500 jobs in the regional economy and 200,000 jobs in the national economy, that upon remand ALJ may need to consider the relevant factors to determine if jobs existed in "significant numbers").

Here, disregarding the first cited occupation, and considering only the jobs offered by the second and third occupations, there remain to Plaintiff a total of 2935 combined jobs in Oklahoma and 256,000 combined jobs in the national economy. These occupations collectively offer more nationally available jobs than were found to be a "significant number" in *Chrismon* and *Stokes* and more such jobs than were suggested may be insufficient in *Norris*. Accordingly, the undersigned finds that the ALJ's error in relying on the first cited occupation was harmless. In light of the two remaining occupations, there was substantial evidence supporting the ALJ's determination that suitable jobs existed in significant numbers in the national economy that Plaintiff could perform. *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 416.969a(a); *see also Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009) ("[T]he controlling statutes, federal regulations, and case law all indicate that the proper focus generally must be on jobs in the national, not regional, economy").

## RECOMMENDATION

Having reviewed the record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties, the undersigned Magistrate Judge recommends that the decision of the Commissioner be AFFIRMED.

## NOTICE OF RIGHT TO OBJECT

The parties are advised of their right to file written objections to this Report and Recommendation in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. Any such objections must be filed with the Clerk of this Court by March 16, 2015. The parties are further advised that failure to timely object to this Report and Recommendation waives the right to appellate review of the factual and legal issues addressed herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

## STATUS OF REFERRAL

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in this case.

ENTERED this 2nd day of March, 2015.

_____
CHARLES B. GOODWIN
UNITED STATES MAGISTRATE JUDGE